DAVID L. HENKIN          #6876
KYLIE W. WAGER CRUZ      #10165
ELENA L. BRYANT          #9548
EARTHJUSTICE
850 Richards Street, Suite 400
Honolulu, Hawaiʻi 96813
Telephone No.: (808) 599-2436
Email:  dhenkin@earthjustice.org
        kwager@earthjustice.org
        ebryant@earthjustice.org

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAIʻI

| | |
|---|---|
| NĀ KIAʻI KAI, an unincorporated association, and SURFRIDER FOUNDATION, a non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF KAUAʻI,<br><br>and<br><br>ELIZABETH A. CHAR, in her official capacity as Director of Health of the DEPARTMENT OF HEALTH, STATE OF HAWAIʻI,<br><br>Defendants. | Civil No. 22-00304<br><br>PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; EXHIBIT A |

## PLAINTIFFS' COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

INTRODUCTION

1.      Defendant County of Kauaʻi (the "County") has been violating, and continues to violate, the Federal Water Pollution Control Act, also known as the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251–1388, by discharging drainage waters contaminated with sediment and other pollutants from the Kīkīaola Harbor Drain – an unlined, earthen ditch located on West Kauaʻi's Mānā Plain that the County owns, operates, and maintains – into the Pacific Ocean – a water of the United States, without the required National Pollutant Discharge Elimination System ("NPDES") permit.

2.      Defendant Elizabeth A. Char, in her official capacity as Director of Health (the "Director of Health") of the Department of Health ("DOH"), State of Hawaiʻi, is named as a necessary party to this action.  DOH, through the Director of Health, is responsible for issuing NPDES permits in compliance with the CWA.

3.      Plaintiffs are informed and believe, and on that basis allege, that DOH has notified the County that an NPDES permit is not required for discharges from the Kīkīaola Harbor Drain, a position that directly contradicts this Court's prior order that an NPDES permit is required for discharges from this same outfall.  *See Nā Kiaʻi Kai v. Nakatani*, 401 F. Supp. 3d 1097 (D. Haw. 2019).  Without a court order requiring the Director of Health to proceed with issuing an NPDES permit

for the outfall, the County of Kaua'i will be unable to come into compliance with the CWA by obtaining an NPDES permit.

4.     Plaintiffs Nā Kia'i Kai and Surfrider Foundation (hereinafter, collectively referred to as "Plaintiffs") are informed and believe, and on that basis allege, that the County's unpermitted discharges began in March 2021 (and likely earlier) and, absent the County's and the Director of Health's actions to bring these discharges into compliance with the CWA, will continue on an intermittent basis.

5.     The County's pollution from the Kīkīaola Harbor Drain has had detrimental effects on, and poses an ongoing threat to, the water quality and health of West Kaua'i's marine waters and ecosystems, particularly the coastal waters along the Kapilimao Watershed, including at Kīkīaola Small Boat Harbor.  The discharge waters visibly contain sediment, including from the eroding drainage ditches that lead to the outfall of the Kīkīaola Harbor Drain.  According to the 2020 and 2022 State of Hawai'i Water Quality Monitoring and Assessment Reports, prepared by the DOH Clean Water Branch pursuant to Sections 303(d) and 305(b) of the CWA, 33 U.S.C. §§ 1313(d), 1315(b), the coastal waters along the Kapilimao Watershed, to which the Kīkīaola Harbor Drain discharges, are impaired for turbidity.  The discharge waters also contain other pollutants, including elevated levels of enterococcus and Total Petroleum Hydrocarbons ("TPH)-Diesel.

6.      Plaintiffs are informed and believe, and on that basis allege, that the Kīkīaola Harbor Drain intermittently discharges contaminated waters into waters of the United States.

7.      The NPDES program regulates the discharge of pollutants from drainage ditches into waters of the United States.  33 U.S.C. § 1342; 40 C.F.R. pt. 122.

8.      The County does not have an NPDES permit regulating its discharges from the Kīkīaola Harbor Drain.  The County, therefore, is in violation of the CWA.  33 U.S.C. § 1311(a).

9.      By this complaint, Plaintiffs seek a declaratory judgment that the County has been and will continue to violate the CWA unless and until the County obtains and complies with the terms of a valid NPDES permit for discharges from the Kīkīaola Harbor Drain.  Plaintiffs seek an injunction requiring the County promptly to obtain and comply with the terms of an NPDES permit to eliminate ongoing illegal discharges.  Plaintiffs also seek imposition of civil penalties for the County's violations of the CWA.

10.     Plaintiffs additionally seek an injunction requiring the Director of Health promptly to process the County's NPDES permit application and issue a valid NPDES permit for the Kīkīaola Harbor Drain to ensure that future discharges comply with state water quality standards.

JURISDICTION AND VENUE

11.     Plaintiffs bring this lawsuit pursuant to the CWA, 33 U.S.C. §§ 1251–1388.  This Court has subject matter jurisdiction over the claims for relief set forth herein pursuant to 33 U.S.C. § 1365(a) (citizen suits to enforce effluent standards or limitations under the CWA), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. §§ 2201-02 (power to issue declaratory judgments in cases of actual controversy).

12.     On February 9, 2022, Plaintiffs mailed written notice of the violations set forth in this complaint, and of their intent to file suit on these CWA claims, to the U.S. Environmental Protection Agency ("EPA") Administrator, EPA Region 9 Administrator, the Governor of the State of Hawaiʻi, the Director of Health, the Mayor of the County of Kauaʻi, and both the Capital Improvements Program Manager and the Emergency Management Administrator of the County of Kauaʻi. *See* 33 U.S.C. § 1365(b)(1)(A); 40 C.F.R. § 135.2(a)(2).  Plaintiffs' notice letter and certified mail return receipts are attached hereto as "Exhibit A."

13.     At least sixty days have elapsed since Plaintiffs served notice of their intent to sue.  *See* Exhibit A.  Neither the EPA nor DOH has commenced or is diligently prosecuting a civil or criminal action in a court of the United States or a state to require the County to obtain an NPDES permit or otherwise address the violations Plaintiffs allege in this complaint.  *See* 33 U.S.C. § 1365(b)(1)(B).

4

14.     The County has failed to obtain and comply with the terms of an NPDES permit for the discharges of drainage waters and pollutants from the Kīkīaola Harbor Drain into waters of the United States, and these CWA violations will continue on an intermittent basis until the County obtains an NPDES permit and complies with permit limits designed to protect water quality.

15.     The County's unpermitted discharges began in March 2021 (and likely earlier) and intermittently enter waters of the United States.  Because some amount of discharge from the Kīkīaola Harbor Drain may be necessary to prevent flooding of Kekaha Town during heavy rainfall events, the County's violations are likely to continue unless and until the County obtains and complies with the terms of a valid NPDES permit.

16.     Venue properly lies in this judicial district under CWA section 505(c)(1), 33 U.S.C. § 1365(c)(1), because the source of the violations at issue is located within this judicial district.

PARTIES

A.     <u>Plaintiffs</u>

17.     Plaintiff Nā Kiaʻi Kai is a community-based organization established by West Kauaʻi residents, including Native Hawaiian fishers and cultural practitioners, to protect West Kauaʻi's coastal waters, humans, and aquatic life from pollution.  Nā Kiaʻi Kai's members live, work, recreate, and practice their

5

culture in and around West Kauaʻi, and extensively use West Kauaʻi's waters for subsistence fishing to feed their families, as they have done for generations, as well as for swimming and surfing. A healthy nearshore ocean environment and good water quality are essential for Nā Kiaʻi Kai members to participate in these activities.

18. Members of Nā Kiaʻi Kai use the Kīkīaola Small Boat Harbor and surrounding waters for subsistence fishing to feed their families. Members enter the Kīkīaola Boat Harbor waters to launch their boats. At least one member uses the harbor wall to set lobster nets during the brief periods when the water is clear (due to wind conditions and changes in the tide) and would do so more often if the water quality in the harbor area were improved. In the recent past, Nā Kiaʻi Kai members used the Kīkīaola Small Boat Harbor and waters immediately adjacent to the harbor to fish for papio (trevally), moi (Pacific threadfin), menpachi (soldierfish), akule and halalū (adult and juvenile bigeye scad), and mullet. Nā Kiaʻi Kai members also utilize the Kīkīaola Small Boat Harbor and waters immediately adjacent to the harbor to catch kūhonu (white crab) and Samoan crab. As more information has been revealed regarding the degraded water quality of the harbor and surrounding waters, Nā Kiaʻi Kai members have grown increasingly concerned about the contaminants in the water and in the fish and shellfish that they gather to feed their families. As a result, in recent years, most Nā Kiaʻi Kai

members have avoided fishing in the Kīkīaola Small Boat Harbor area, but they would like to resume subsistence fishing in the harbor area and would regularly do so if the water quality improved.

19.     Plaintiff Surfrider Foundation is a non-profit environmental organization dedicated to the protection and enjoyment of the world's oceans, waves, and beaches for all people through a powerful network.  Surfrider Foundation has 350,000 members and supporters, including hundreds of members who are Kauaʻi residents and members who visit Kauaʻi regularly.  Surfrider Foundation members use the nearshore waters along the West Kauaʻi coastline, including the Kīkīaola Small Boat Harbor and the waters immediately adjacent to the harbor, for recreational activities.  One member lives in an oceanfront home one block from the Kīkīaola Harbor Drain.  When the Kīkīaola Harbor Drain is not open and the water appears clear, this member and his family use the Kīkīaola Small Boat Harbor and adjacent waters for boating, surfing, and swimming. Because of the turbidity and pollutants discharged from the Kīkīaola Harbor Drain, he is greatly concerned about the quality of water and health impacts of the polluted water that literally washes up along his backyard.  Surfrider members would like to engage in recreational activities such as boating, swimming, and surfing more often if the water quality at the Kīkīaola Small Boat Harbor improved.  A healthy nearshore ocean environment and good water quality are

essential for Surfrider Foundation members to participate in these recreational activities.

20.     Surfrider Foundation Kaua'i Chapter has spent substantial organizational funds to spearhead an integrated campaign to protect the island's watershed and coastal resources, especially through testing and notifying the public of water pollution issues.  The Chapter works with state and federal agencies to share its water quality testing results and improve water quality.  The Chapter's Blue Water Task Force collects samples and tests for pollutants, including enterococcus bacteria – the presence of which indicates contamination from the feces of warm-blooded animals – to identify polluted waters and make sure that the public is aware of potential health threats at the beaches and coastal recreational waters of Kaua'i.  The Chapter is promoting Surfrider Foundation's Clean Water Initiative, one of the organization's top priorities over the last 28 years, which strives to protect water resources and prevent pollution from reaching the ocean.

21.     Over the past several years, Surfrider Foundation members have taken and analyzed samples of nearshore ocean and stream water around the island. Surfrider Foundation has specifically tested the waters in the Kīkīaola Harbor Drain due to concerns about water quality in West Kaua'i.

22.     Nā Kia'i Kai and Surfrider Foundation were plaintiffs in the lawsuit *Nā Kia'i Kai v. Nakatani*, 401 F. Supp. 3d 1097 (D. Haw. 2019), in which this

Court held that discharges from the Kīkīaola Harbor Drain require an NPDES permit.  They seek to enforce and implement this Court's prior ruling.

23.    The County's operation of the Kīkīaola Harbor Drain in violation of the CWA, DOH's failure to issue an NPDES permit to ensure that discharges from the Kīkīaola Harbor Drain comply with state water quality standards, and the resulting pollution in the harbor and surrounding waters have adversely affected and continue to adversely affect the environmental, cultural, subsistence, recreational, and public health interests of Nā Kiaʻi Kai and Surfrider.  Unless the relief requested herein is granted, Plaintiffs will continue to be irreparably injured by the County's illegal pollution and DOH's refusal to address that pollution, as detailed below.  Plaintiffs bring this action on behalf of themselves and their adversely affected members.

B.    Defendants

24.    Defendant County of Kauaʻi is the owner and operator of the Kīkīaola Harbor Drain.  Plaintiffs are informed and believe, and on the basis thereof allege, that the County has owned and operated the drainage ditch system at all times that the violations alleged in this complaint have taken place and will continue to take place.  Plaintiffs are further informed and believe, and on the basis thereof allege, that the County is discharging pollutants to navigable waters without an NPDES permit in violation of the CWA.  33 U.S.C. § 1311(a).  If ordered by the Court, the

County has the authority and ability to remedy the harm inflicted by discharges from the Kīkīaola Harbor Drain in violation of the CWA.

25.     Defendant Elizabeth A. Char is sued in her official capacity as the Director of Health of the Department of Health, State of Hawai'i. *See* Haw. Rev. Stat. § 26-13(a). DOH, through the Director of Health, is responsible for administering Hawai'i's water pollution laws, *id.* § 342D-2, and, pursuant to CWA section 402(b), the EPA has delegated to DOH the authority to administer the State of Hawai'i's NPDES permit program. *See* 33 U.S.C. § 1342(b). The Director of Health is responsible for issuing NPDES permits in compliance with the CWA. Haw. Rev. Stat. § 342D-50; Haw. Admin. R. § 11-55-15.

26.     The Director of Health is named as a necessary party for relief pursuant to Rule 19(a) of the Federal Rules of Civil Procedure. Plaintiffs are informed and believe, and on that basis allege, that DOH has notified the County that an NPDES permit is not required for discharges from the Kīkīaola Harbor Drain, a position that directly contradicts this Court's prior decision that an NPDES permit is required for discharges from this same outfall. *See Nā Kia'i Kai v. Nakatani*, 401 F. Supp. 3d 1097 (D. Haw. 2019). Plaintiffs are further informed and believe, and on that basis allege, that DOH refuses to issue an NPDES permit for discharges from the Kīkīaola Harbor Drain. Without a court order requiring the Director of Health to proceed with issuing an NPDES permit for the outfall, the

County of Kauaʻi will be unable to come into compliance with the CWA by obtaining an NPDES permit.  The Court cannot, therefore, accord complete relief among the parties in the Director of Health's absence.  If ordered by the Court, the Director of Health has the authority and ability to process the County of Kauaʻi's application for an NPDES permit for discharges from the Kīkīaola Harbor Drain and issue a permit that complies with the CWA.

## STATUTORY BACKGROUND

27.    In 1972, Congress enacted the Federal Water Pollution Control Act, known as the Clean Water Act, to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  To further this central goal, section 301(a) of the CWA prohibits "the discharge of any pollutant" into the nation's waters, except when specifically authorized under the CWA.  *Id*. § 1311(a).

28.    The CWA defines the term "pollutant" broadly to include "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water."  *Id*. § 1362(6).

29.    The CWA defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."  *Id*. § 1362(12).

11

30.     The CWA defines "navigable waters" to include "waters of the United States, including the territorial seas." *Id*. § 1362(7).

31.     The CWA defines "territorial seas" as "the belt of the seas measured from the line of ordinary low water along that portion of the coast which is in direct contact with the open sea and the line marking the seaward limit of inland waters, and extending seaward a distance of three miles." *Id*. § 1362(8).

32.     The CWA defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, . . . [or] discrete fissure … from which pollutants are or may be discharged." *Id*. § 1362(14).

33.     Section 402(a) of the CWA, *id*. § 1342(a), authorizes the issuance of NPDES permits to allow persons to discharge limited quantities of pollutants into surface waters from point sources, where appropriate.  The NPDES program is designed to protect the quality of surface waters.  Without an NPDES permit, the CWA imposes strict liability for any point-source discharge that adds pollutants to waters of the United States, with dischargers subject to enforcement action and civil penalties.  *Id*. §§ 1311(a), 1319; 40 C.F.R. § 19.4.

34.     CWA section 402(b), 33 U.S.C. § 1342(b), gives the EPA Administrator authority to allow a state to administer its own NPDES program.  In the state of Hawaiʻi, the EPA has delegated authority to DOH, through the Director

of Health, to issue NPDES permits.  39 Fed. Reg. 43,759 (Dec. 18, 1974); *see also*

Haw. Rev. Stat. § 342D-50; Haw. Admin. R. § 11-55-15.  A state-issued NPDES

permit can impose effluent limits and other provisions that are more stringent than

the federal requirements for an NPDES permit, but all provisions must be at least

as stringent as the federal requirements.  40 C.F.R. § 123.25(a); Haw. Admin. R. §

11-55-02(c).

35.    Federal or state agencies administering the NPDES program are

required to ensure compliance with a variety of CWA provisions – including state

water quality standards, which incorporate water body use classifications, water

quality criteria, and anti-degradation requirements – and ultimately determine

whether a discharge permit will be issued and, if so, the quantities of pollutants

permitted in that discharge.  *See, e.g.*, 40 C.F.R. pts. 122, 123; Haw. Admin. R. ch.

11-55.

36.    The CWA requires that waters in each state be assigned use

classifications that determine the types of uses a particular water body should be

able to support.  40 C.F.R. § 131.10.  Classifications of water bodies must take into

account uses such as "recreation in and on the water" and "protection and

propagation of fish, shellfish and wildlife," among others.  *Id*. § 131.10(a).

Administrative rules determine the use classifications of water bodies in Hawai'i,

including those for marine waters.  Haw. Admin. R. §§ 11-54-2 (classification of state waters), 11-54-3 (classification of water uses).

37.     Along with establishing use classifications, states establish water quality criteria designed to protect the designated uses assigned to a particular body of water.  40 C.F.R. § 131.11(a).  The criteria can be either narrative, which describe qualitative conditions, or numeric, which set quantitative limits for certain pollutants.  *Id.* § 131.11(b).

38.     Haw. Admin. R. § 11-54-4 and chapter 11-54 Appendix E, contain narrative and numeric water quality criteria that apply to all waters, including the Kīkīaola Small Boat Harbor and the adjacent nearshore marine areas.  Haw. Admin. R. § 11-54-6(a)(3) contains numeric water quality criteria that apply to the Kīkīaola Small Boat Harbor.  *See also* Haw. Admin. R. ch. 11-54 app. C.  Haw. Admin. R. § 11-54-6(b)(3) contains numeric water quality criteria that apply to all open coastal waters.

39.     In Hawaiʻi, narrative criteria require that, among other things, "[a]ll waters shall be free of substances attributable to domestic, industrial, or other controllable sources of pollutants, including:  (1) Materials that will settle to form objectionable sludge or bottom deposits; (2) Floating debris, oil, grease, scum, or other floating materials; (3) Substances in amounts sufficient to produce taste in the water or detectable off-flavor in the flesh of fish, or in amounts sufficient to

14

produce objectionable color, turbidity, or other conditions in the receiving waters; (4) High or low temperatures, biocides, pathogenic organisms, toxic, radioactive, corrosive, or other deleterious substances at levels or in combinations sufficient to be toxic or harmful to human, animal, plant, or aquatic life, or in amounts sufficient to interfere with any beneficial use of the water; (5) Substances or conditions or combinations thereof in concentrations which produce undesirable aquatic life; and (6) Soil particles resulting from erosion on land involved in earthwork, such as the construction of public works; highways; subdivisions; recreational, commercial, or industrial developments; or the cultivation and management of agricultural lands." *Id.* § 11-54-4(a).

40.   The numeric criteria establish limits for a variety of pollutants including, but not limited to, turbidity. *See id*. §§ 11-54-4(c)(3), 11-54-6(a)(3), 11-54-6(b)(3); ch. 11-54, App. E.

41.   In addition to narrative and numeric criteria, "ocean discharge criteria" must be applied when establishing NPDES permit limits for discharges into the territorial sea or ocean.  33 U.S.C. § 1343(a).  Pursuant to federal regulations, the agency drafting an NPDES permit must determine "whether a discharge will cause unreasonable degradation of the marine environment," based on numerous factors, including "[e]xisting or potential recreational and commercial fishing, including finfishing and shellfishing," and "[t]he potential

impacts on human health through direct and indirect pathways." 40 C.F.R. §

125.122(a).  Agencies issuing NPDES permits for discharges into the ocean must

ensure that any discharges will not unreasonably degrade the marine environment

or, in situations where the director does not have sufficient information to make

that determination, must require that the permittee comply with specified permit

conditions while the director gathers necessary information; otherwise, the permit

cannot be issued.  *Id*. § 125.123(a)-(d).

42.    The CWA and implementing regulations further set forth minimum

requirements for states to establish an anti-degradation policy, which is intended to

protect waters from activities that could lower water quality.  *Id*. § 131.12(a).

Hawaiʻi's anti-degradation regulations require that, at a minimum, "[e]xisting uses

and the level of water quality necessary to protect the existing uses shall be

maintained and protected."  Haw. Admin. R. § 11-54-1.1(a).

43.    In Hawaiʻi, "[n]o person, including any public body, shall discharge

any water pollutant into state waters, or cause or allow any water pollutant to enter

state waters" except in compliance with the state's water pollution regulations.

Haw. Rev. Stat. § 342D-50(a); *see* also Haw. Admin. R. § 11-55-03.

44.    DOH has promulgated procedural requirements to apply for, obtain,

and renew an NPDES permit in Hawaiʻi.  *See* Haw. Admin. R. §§ 11-55-04, 11-55-

15, 11-55-27.  The Director of Health is charged with reviewing applications for

NPDES permits and determining the limits in NPDES permits based on, among

other things, the nature of the discharge from the facility and the state water quality

standards in the receiving water body. *Id*. § 11-55-15. "It is the public policy of

[the State of Hawai'i] . . . [t]o provide that no waste be discharged into any State

waters without first being given the degree of treatment necessary to protect the

legitimate beneficial uses of the waters." *Id*. § 11-55-02(a)(3).

45.     Facilities proposing to discharge generally must submit an application

for an NPDES permit at least 180 days <u>prior</u> to the date when the discharge is

scheduled to commence or an existing NPDES permit will expire.  40 C.F.R. §

122.21(c)(1), (d); Haw. Admin. R. §§ 11-55-04(a)(1), 11-55-27(a).

46.     In Hawai'i, state regulations create a mechanism for DOH to impose

strict monitoring, reporting, and testing requirements on NPDES permittees to

ensure compliance with the permit's discharge limits and conditions.  Haw.

Admin. R. §§ 11-55-28 to 11-55-31.


BACKGROUND FACTS

A.     <u>The Mānā Plain Drainage Ditch System and Discharges from the
       Kīkīaola Harbor Drain</u>

47.     In the early 1920s, the Kekaha Sugar Company developed a drainage

ditch system on the Mānā Plain (the "Mānā Plain Drainage Ditch System") to

lower the water table to allow for sugarcane production.  In 2001, Kekaha Sugar

Company closed, and, in 2003, the governor transferred the management of approximately 12,500 acres of agricultural lands formerly in sugar cultivation from the state Department of Land and Natural Resources to the state Agribusiness Development Corporation ("ADC").  ADC also assumed ownership and management of the drainage ditch system and Kekaha Sugar Company's NPDES permit regulating discharges from the system.

48.    The Mānā Plain Drainage Ditch System includes, but is not limited to, forty miles of earthen, unlined drainage canals and ditches, several storage reservoirs, two pumping stations (the Kawaiʻele Pumping Station and the Nohili Pumping Station), and six ocean outfalls.  The six outfalls are Kawaiʻele Outfall, Nohili Outfall, Cox Drain, First Ditch, Second Ditch, and the Kīkīaola Harbor Drain – the last of which is now owned and operated by the County and is the subject of this lawsuit.

49.    The Kīkīaola Harbor Drain is the farthest east of the Mānā Plain Drainage Ditch System's six ocean outfalls.  It is located along the Kaumualiʻi Highway near the eastern end of Kekaha Town.  To prevent the flooding of Kekaha Town during heavy rainfall events, the Kīkīaola Harbor Drain is opened by breaching one or more earthen berms that otherwise block drainage waters from entering the Kīkīaola Small Boat Harbor and adjacent nearshore ocean waters.  The

Kīkīaola Harbor Drain is unlined and eroding, and the waters it discharges are untreated.

50.     Land uses on the portion of the Mānā Plain that the Kīkīaola Harbor Drain drains include, but are not limited to, genetically engineered seed crop operations, pasture lands, a gravel and asphalt plant, and the Waimea Wastewater Treatment Plant.

B.     Pollution from Kīkīaola Harbor Drain

51.     The water discharged from the Kīkīaola Harbor Drain contains pollutants including, but not limited to, sediment, enterococcus bacteria, and diesel. Pollution from the Kīkīaola Harbor Drain poses an ongoing threat to the water quality and health of West Kaua'i's nearshore ocean waters and ecosystems.

52.     The discharge waters visibly contain sediment, including from the eroding drainage ditches that lead to the outfall of the Kīkīaola Harbor Drain. According to the 2020 and 2022 State of Hawai'i Water Quality Monitoring and Assessment Reports, prepared by the DOH Clean Water Branch pursuant to Sections 303(d) and 305(b) of the CWA, the coastal waters along the Kapilimao Watershed, to which the Kīkīaola Harbor Drain discharges, are designated as impaired for turbidity.

53.     The Kīkīaola Drainage ditch contains elevated levels of enterococcus. Enterococci are indicators of the presence of fecal material in water and, therefore,

of the possible presence of disease-causing bacteria, viruses, and protozoa.  U.S.

EPA National Aquatic Resource Surveys, Indicators: Enterococci (2002), available

at https://www.epa.gov/national-aquatic-resource-surveys/indicators-enterococci.

These pathogens can sicken swimmers and others who use contaminated waters for

recreation or eat raw shellfish or fish.  *Id.*  Other potential health effects can

include diseases of the skin, eyes, ears, and respiratory tract.  *Id.*  Eating fish or

shellfish harvested from waters with fecal contamination can also result in human

illness. *Id.*

  54. The Kīkīaola Drainage ditch also contains TPH-Diesel.  Compounds

found in diesel may affect the central nervous system, respiratory system, kidneys,

skin, and eyes.  Ingestion of diesel may cause nausea, vomiting, diarrhea, and

irritation of the gastrointestinal tract.  The International Agency for Research on

Cancer has determined that one TPH compound, benzene, is carcinogenic to

humans, while other TPH compounds (such as benzoapyrene and gasoline) are

"probably and possibly carcinogenic to humans."  U.S. Department of Health and

Human Services, Agency for Toxic Substances and Disease Registry, Total

Petroleum Hydrocarbons (TPH) ToxFAQs, Aug. 1999, at 2.  There is evidence

linking diesel with cancer in animals following prolonged exposure.

C.    Water Quality Standards and Uses Surrounding the Kīkīaola Harbor
      Drain

55.    DOH, the state agency charged with setting water quality standards,

has designated the coastal waters along the Kapilimao Watershed, including the

nearshore marine waters adjacent to the Kīkīaola Small Boat Harbor, as Class A,

open coastal marine waters.  H.A.R. § 11-54-6(a)(2)(B).  Protected uses in the area

include aesthetic enjoyment and recreation.  *Id*. § 11-54-3(c)(2).  Any other use

must be "compatible with the protection and propagation of fish, shellfish, and

wildlife, and with recreation in and on these waters."  *Id*.  Class A waters "shall not

act as receiving waters for any discharge which has not received the best degree of

treatment or control compatible with the criteria established for this class."  *Id*.

56.    The nearshore ocean waters around the Kīkīaola Harbor Drain have

been used extensively for recreational, cultural, and subsistence purposes in the

past.  Community members, including Native Hawaiians, would like to catch fish

and crab in Kīkīaola Small Boat Harbor and also surf, swim and conduct other

recreational activities in adjacent nearshore areas.  These recreational, cultural, and

subsistence activities have been reduced or impeded due to the contamination of

the Kīkīaola Small Boat Harbor and adjacent nearshore waters; however,

community members would like to use these waters again if the water quality is

improved.

21

D.   <u>The County's and the Director of Health's Failure to Abide by the Hawai'i District Court's Ruling that Discharges from the Kīkīaola Harbor Drain Require an NPDES Permit</u>

57.   In 2015, ADC withdrew its NPDES permit application for the Mānā Plain Drainage Ditch System's six outfalls, including the Kīkīaola Harbor Drain. In 2016, Plaintiffs Nā Kiaʻi Kai and Surfrider Foundation, as well as the Pesticide Action Network North America, brought a lawsuit in this Court against ADC for discharging from the system without an NPDES permit.

58.   The plaintiffs originally named DOH as a defendant in the lawsuit, but DOH successfully moved to be dismissed, before briefing on the merits occurred. Even after DOH was dismissed from the lawsuit, DOH continued to receive all ECF notifications and, thus, was aware or should have been aware of all case developments.

59.   In July 2019, this Court ruled that ADC was violating the CWA by discharging pollutants without an NPDES permit from two pumping stations (Kawaiʻele and Nohili) and four bermed outfalls (Kīkīaola Harbor Drain, Cox Drain, First Ditch, and Second Ditch). *See Nā Kiaʻi Kai v. Nakatani*, 401 F. Supp. 3d 1097 (D. Hawaiʻi 2019). ADC did not appeal this ruling, and DOH did seek leave to intervene to pursue an appeal. The legal requirement for an NPDES permit for discharges from the Kīkīaola Harbor Drain is, therefore, a settled matter of law.

60.     After this Court issued its July 2019 decision, ADC applied for an NPDES permit for all of the Mānā Plain Drainage System outfalls except for the Kīkīaola Harbor Drain.  ADC represented that it was no longer responsible for discharges from the Kīkīaola Harbor Drain and that the outfall was now the County's responsibility.

61.     Plaintiffs are informed and believe, and on that basis allege, that the County has owned and operated the Kīkīaola Harbor Drain since July 2020, at the latest.  According to the August 2020 Storm Procedures for the Mānā Plain drainage ditch system, the County is responsible for authorizing discharges from the Kīkīaola Harbor Drain.  Plaintiffs are informed and believe, and on that basis allege, that the County has intermittently discharged drainage waters from the Kīkīaola Harbor Drain to the nearshore ocean waters along West Kauaʻi without an NPDES permit, from March 2021 (and likely earlier) to the present.

62.     Plaintiffs are informed and believe, and on that basis allege, that the County contacted DOH for guidance on how to begin the NPDES permitting process for the Kīkīaola Harbor Drain, and that DOH responded that, notwithstanding this Court's ruling in *Nā Kiaʻi Kai v. Nakatani*, discharges from the Kīkīaola Harbor Drain do not require an NPDES permit.

63.     Due in part to the Director of Health's refusal to abide by the Court's ruling, the County lacks the requisite NPDES permit for discharges from the Kīkīaola Harbor Drain.

64.     Plaintiffs are informed and believe, and on that basis allege, that, on or about March 31, 2022, the County submitted to DOH an NPDES permit application for discharges from Kīkīaola Harbor Drain.  Plaintiffs are further informed and believe, and on that basis allege, that, due to its position that an NPDES permit is not required to discharge from Kīkīaola Harbor Drain, DOH is not processing—and, absent an order from this Court, will not process—the County's NPDES permit application for the Kīkīaola Harbor Drain.

## CLAIM FOR RELIEF

(The County's Violations of the Clean Water Act by Discharging Drainage Waters Without an NPDES Permit)

65.     Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 64 of this complaint.

66.     The County has violated and is violating section 301(a) of the CWA, 33 U.S.C. § 1311(a), by intermittently discharging polluted waters from the Kīkīaola Harbor Drain into waters of the United States without an NPDES permit. The County is subject to civil penalties under the CWA section 309(d), 33 U.S.C § 1319(d).  33 U.S.C. § 1319(d); 40 C.F.R. § 19.4.

24

67.     The County's CWA violations began in March 2021 (and likely earlier) and will continue on an intermittent basis until the County obtains and complies with an NPDES permit for discharges from the Kīkīaola Harbor Drain. *See* 33 U.S.C. §§ 1311(a), 1342.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.     Enter a declaratory judgment that the County has violated and is violating the CWA by intermittently discharging polluted waters from the Kīkīaola Harbor Drain into waters of the United States without an NPDES permit;

2.     Issue a mandatory injunction that:

a. Requires the County promptly to obtain and comply with the terms of a valid NPDES permit for discharges from the Kīkīaola Harbor Drain; and

b. Requires the Director of Health to process the County's NPDES permit application and proceed with issuing a valid NPDES permit for discharges from the Kīkīaola Harbor Drain;

3.     Impose civil penalties for the County's illegal, unpermitted discharges from the Kīkīaola Harbor Drain pursuant to 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

25

4.      Award Plaintiffs the costs of this litigation, including reasonable attorney and expert witness fees, pursuant to CWA section 505(d), 33 U.S.C. § 1365(d);

5.      Retain continuing jurisdiction to ensure Defendants' compliance with all judgments and orders entered herein;

6.      Issue such additional judicial determinations and orders as may be necessary to effectuate the foregoing requests for relief; and

7.      Issue such other and further relief as the Court deems just and appropriate to effectuate a complete resolution of the legal disputes between Plaintiffs and Defendants.

DATED:  Honolulu, Hawai'i, July 14, 2022.

/s/ Elena L. Bryant
DAVID L. HENKIN
KYLIE W. WAGER CRUZ
ELENA L. BRYANT
EARTHJUSTICE

Attorneys for Plaintiffs